# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

ROLAND STEVENS #298883,

    *Plaintiff*,

v.

JOSHUA BUSKIRK, P.A.,

    *Defendant*.

                      /

CASE NO. 2:13-CV-15280

DISTRICT JUDGE GERSHWIN A. DRAIN
MAGISTRATE JUDGE PATRICIA MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT MOTION TO DISMISS DUE TO PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES
(Doc. 17)

**I.     RECOMMENDATION**

For the reasons presented below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss Due to Plaintiff's Failure to Exhaust His Administrative Remedies be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

Plaintiff Roland Stevens filed this *pro se* prisoner civil rights action under 42 U.S.C. § 1983 on December 23, 2013. (Doc. 1 at 1.) Plaintiff alleges that Defendant was deliberately indifferent to his medical needs in violation of the Eighth Amendment. (*Id.* at 4.) Plaintiff specifically alleges that Defendants only allowed him to see nurses and did not allow him to see a doctor for over a month after he first complained about his head trauma. (*Id.* at 5.) U.S. District Judge Gershwin A. Drain has referred all pretrial matters to the undersigned magistrate judge. (Doc. 18 at 1.)

Defendant moves for dismissal, arguing that Plaintiff failed to properly exhaust the remedies available to him through the Michigan Department of Corrections' ("MDOC")

Prisoner/Parolee Grievances Policy Number 03.02.130. (Doc. 17 at 2.) I suggest that Plaintiff did not properly exhaust his available remedies because he did not complete the grievance procedure by pursuing his grievances through completion of Step III. (Doc. 17-1 at 1; Doc. 19 at 1.)

### B. Motion Standards

Although Defendant Buskirk labeled his motion a motion to dismiss, since the court has relied on documents outside of the pleadings, it will be considered a motion for summary judgment. A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary

2

judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Background

#### 1. The Michigan Department of Corrections Grievance Policy

The MDOC provides prisoners with a grievance procedure for their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD

3

03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

### 2. Grievance Filed by Plaintiff

The MDOC Prisoner Step III Grievance Report: May 2009 to Present, reflects that Plaintiff has not pursued any grievances through the resolution of Step III from May, 2009 to March 19, 2014. (Doc. 17-1 at 1.) Plaintiff did file a grievance on October 14, 2013 and pursued it to the end of Step II. (Doc 1 at 17.) In his Response to the Motion, Plaintiff explained that "pursuing this matter has caused me problems . . . . To keep down the retaliation I stop[ped] trying to pursue this matter any further and deal with the injury  . . . ." (Doc. 19 at 1.)

### D. Exhaustion of Remedies Law and Analysis

### 1. Exhaustion of Remedies: Governing Law and Policies

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to

4

federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits 'brought with respect to prison conditions' to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or

5

ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a Plaintiff needed to identify the Defendant by name during the initial grievance process. Since MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.*[1]

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.* The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint. *Id.* at 921.

**3. Exhaustion of Remedies Analysis**

The Supreme Court directs courts to look to the prison's policy itself to determine if a prisoner has properly exhausted remedies. *Jones*, 549 U.S. at 218. The *Jones* Court also insists

---

[1] The MDOC has subsequently changed its policy, requiring that in order to properly exhaust remedies plaintiffs need to identify all defendants in the initial grievance that they later name in the subsequent federal complaint. *See infra* Part II.C.2.

6

that the PLRA requires prisoners follow the prison's grievance policy through to completion *before* "initiating a lawsuit." *Id.* at 202 (emphasis added). According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130 (B), (FF), (GG).

Plaintiff has not pursued any grievance against Defendant to the completion of Step III. (Doc. 17 at 7.) It is not nearly enough that Plaintiff wanted to devote his energy into getting better or that he found the grievance policy cumbersome and stressful. (Doc. 19 at 1-2) Instead of giving the MDOC the opportunity to properly hear and address his frustrations regarding only being able to see nurses, Plaintiff accused Defendant of violating the Eighth Amendment and filed a complaint in federal court. Congress made it clear by passing the PLRA that prisoners cannot sidestep prison policy in this way. Because Plaintiff did not follow the MDOC's procedure by following the grievance policy to completion, I suggest he has not properly exhausted available remedies as required by the PLRA.

### E.   Conclusion

For all the reasons stated above, I suggest that the Motion to Dismiss Due to Plaintiff's Failure to Exhaust His Administrative Remedies be **GRANTED**.

### III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P.

72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 26, 2014                    /S PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge

## **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was served by first class mail on Roland Stevens, #298883, Saginaw Correctional Facility, 9625 Pierce Rd., Freeland, MI, 48623; and served on District Judge Drain in the traditional manner.

Date:  June 26, 2014	By	s/*Jean L. Broucek*
	Case Manager to Magistrate Judge Morris

9